**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

SIG Pack, Inc., Doboy Division,

Plaintiff and Counterclaim Defendant,

vs.

Schwan's Sales Enterprises, Inc.,

Defendant and Counterclaim Plaintiff.

Court File No.01-CV-263 DWF/AJB

**ANSWER & COUNTERCLAIM**

**(JURY TRIAL DEMANDED)**

---

For its answer and counterclaim, defendant and counterclaim plaintiff Schwan's Sales Enterprises, Inc. ("Schwan's") alleges:

1. Except as further admitted or qualified, Schwan's denies each and every allegation in the Complaint.

2. Upon information and belief, Doboy maintains an address at 869 Knowles Avenue in New Richmond, Wisconsin. Schwan's is without sufficient information to respond to the remaining allegations in paragraph 1. Therefore, it denies them.

3. Schwan's admits the allegations in paragraphs 2 and 6. With regard to paragraph 8, Schwan's admits that it solicited Doboy's interest in submitting a proposal to design and install portions of an expanded pizza production line, that that the plant could have up to six pizza presses, and that Doboy advised that it would submit a proposal. Schwan's denies the remaining allegations of Paragraph 8.

4. Paragraphs 2, 3, 7, and 11 state legal conclusions to which no response is required. To the extent a response is required, they are denied.

5. Upon information and belief, Schwan's admits the allegations in paragraph 5.

6. Schwan's admits that it requested Doboy submit a quote for the design and installation for portions of an expanded pizza production line for its pizza production at Schwan's Florence, Kentucky facility. The requests speak for themselves, and Schwan's denies the allegations of paragraph 9 to the extent inconsistent with provisions of the initial requests. Schwan's further alleges that Doboy submitted proposals, negotiated and signed contracts that form the basis of Doboy's obligations on this project.

7. Schwan's affirmatively alleges that Doboy submitted proposals to Schwan's, and that Doboy entered into a contract to design and install portions of the Pizza production line at the Schwan's facility in Florence, Kentucky. Doboy and Schwan's also entered into supplemental agreements and change orders beyond those alleged in Paragraph 10 of the complaint. Schwan's denies the allegations of paragraph 10 of the complaint to the extent Doboy fails to allege the full basis and terms of Doboy's contract, or acknowledge additional work or changes for the project. Schwan's denies the remaining allegations in paragraph 10.

8. Schwan's denies the allegations in paragraphs 12, 14-21, 23-24, and 27-28.

9. Schwan's admits change orders were issued during the project with the consent of Doboy. The change orders speak for themselves. Any allegations inconsistent with the change orders are denied and the remaining allegations in paragraph 13 are denied.

10. Schwan's realleges and incorporates by reference its response to the paragraphs preceding paragraphs 22 and 25. Specifically, the denials alleged in those paragraphs are realleged and incorporated by reference.

**AFFIRMATIVE DEFENSES**

Schwan's alleges:

**FIRST AFFIRMATIVE DEFENSE**

11. All (or some) of Doboy's claims are barred by the doctrine of estoppel.

**SECOND AFFIRMATIVE DEFENSE**

12. To the extent discovery reveals the need to assert the defense, all (or some) of Doboy's claims are barred by the doctrine of laches

**THIRD AFFIRMATIVE DEFENSE**

13. All (or some) of Doboy's claims are barred by the terms of the parties' agreement.

**FOURTH AFFIRMATIVE DEFENSE**

14. All (or some) of Doboy's claims are barred by the doctrines of waiver and/or modification.

**FIFTH AFFIRMATIVE DEFENSE**

15. All (or some) of Doboy's claims are barred by the doctrine of unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**

16. All (or some) of Doboy's claims are barred by a failure of consideration.

**SEVENTH AFFIRMATIVE DEFENSE**

17. To the extent discovery reveals the need to assert the defense, all (or some) of Doboy's claims are barred by the applicable statutes of limitation.

**EIGHTH AFFIRMATIVE DEFENSE**

18. All (or some) of Doboy's claims are barred by its failure to mitigate its damages.

**NINTH AFFIRMATIVE DEFENSE**

19. All (or some) of Doboy's claims are barred by the equitable doctrines of unjust enrichment and/or *quantum meruit*.

**TENTH AFFIRMATIVE DEFENSE**

20. All (or some) of Doboy's claims are barred by the equitable doctrine of recoupment.

**ELEVENTH AFFIRMATIVE DEFENSE**

21. All (or some) of Doboy's claims are barred by the equitable doctrine of set-off.

**TWELFTH AFFIRMATIVE DEFENSE**

22. All (or some) of Doboy's claims are barred by its fraud. The facts supporting this defense are alleged below and incorporated by reference.

**THIRTEENTH AFFIRMATIVE DEFENSE**

23. To the extent discovery reveals the need to assert the defense, all (or some) of Doboy's claims are barred by the statute of frauds.

**FOURTEENTH AFFIRMATIVE DEFENSE**

24. Any failure to perform by Schwan's is excused by Doboy's breach of the parties' agreement.

**FIFTEENTH AFFIRMATIVE DEFENSES**

25. Any failure to perform by Schwan's is excused by Doboy's breach of express and implied warranties.

## SIXTEENTH AFFIRMATIVE DEFENSE

26. All (or some) of Doboy's claims are barred by failure of a condition precedent and/or subsequent.

## SEVENTEENTH AFFIRMATIVE DEFENSE

27. All (or some) of Doboy's claims are barred by the doctrine of unconscionability.

## COUNTERCLAIM

Pursuant to Rules 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Schwan's alleges:

## FACTS

Schwan's realleges and incorporates by reference ¶¶ 1-27, above.

1. As alleged in its complaint, Doboy "manufacture[s] and install[s] automated packaging systems and equipment." Doboy is a "merchant" (as that term is used in section 2-104 of the Uniform Commercial Code) with respect to the sale of the goods and services at issue in this controversy. At all relevant times, Schwan's (a "consumer" of the goods and services it sought to purchase from Doboy) relied completely and reasonably on Doboy's represented expertise. Doboy was aware of this reliance, fostered it, and exploited it.

2. Doboy represented to Schwan's (both orally and in writing) that Doboy had significant expertise in the manufacture and design of automated packing and processing machinery and that Doboy was capable of designing a system for Schwan's that would allow Schwan's to process up to 80 rows of pizza per minute, across three rows, for a maximum of 240 sealed products per minute. Doboy also represented that Schwan's could operate the expanded production line at 97% efficiency, without any limitations as to capacity or rate. Over time, Schwan's worked with Doboy to modify

the configuration of the line and obtained additional equipment and services from Doboy. These modifications included addition of a wrapping machine, relocation of the insertion point for cardboard disks, and other modifications agreed to by Doboy. Doboy reiterated and confirmed its original representatations, warranties, and promises after these modifications, and over the entire time Doboy worked on the project.

3. Reasonably relying on representations of fact, warranties, and promises made by Doboy, Schwan's entered into an agreement with SIG Pack, Inc., and its Doboy Division, as well as change orders to the agreement. Pursuant to these agreements, Doboy was to design, manufacture, and install a pizza production line at Schwan's Florence, Kentucky plant that met the efficiency requirements promised by Doboy.

4. Doboy agreed it would provide the specified services and equipment by August 1999. Doboy failed to timely complete its work. When Doboy finally did install the production line, it failed to comply with Doboy's express representations, warranties, and promises.

5. Schwan's timely notified Doboy of the defects. Doboy promised that it would eliminate the defects under its contract, but failed. Between August 23, 1999 through March 20, 2000, Doboy attempted to remedy the problems and bring the system into compliance with Doboy's proposal. Despite several modifications to the production line, Doboy was unable to meet the performance criteria promised. Doboy did not advise Schwan's that it would charge Schwan's or seek payment for services to bring the equipment into compliance with requirements of the contract and Doboy's express representations, warranties and promises. Schwan's understood that these services were being provided under the original agreements and change orders, and Schwan's did not agree to any additional compensation to Doboy for these services.

6. During efforts to resolve the problems, Schwan's representatives advised Doboy that the production line's problems caused substantial product loss and production shutdowns. Mr. Mohamad Basma of Schwan's told Doboy prior to October of 1999 that the production delays were unacceptable and must be remedied. Basma told Doboy that Schwan's would retain another firm in October of 1999 to remedy the problems if Doboy was not capable of doing so. Doboy's president, Mr. William Heilhecker, represented to Schwan's that Doboy could (and would) remedy the problems and that it was not necessary to retain another firm. Schwan's advised Doboy that it would hold Doboy responsible for its lost profits resulting from any failure to remedy the problems, and bring the system into compliance with the performance specified in the agreements by October of 1999. Schwan's informed Doboy that Doboy's continued presence was conditioned on Doboy's promise to bear responsibility for any losses resulting from its failure to meet the 97% performance criteria after October, 1999. Doboy agreed. Schwan's relied on Doboy's representations, warranties, and promises and decided not to retain another firm in October of 1999.

7. Doboy was not able to remedy the problems with the system, despite repeated efforts. Ultimately, on March 20, 2000, Schwan's discontinued Doboy's services after the line continued to experience problems. Due to Doboy's continued inability to provide the performance standards required by contract, Schwan's contracted with Delta Systems, Inc. to improve performance of the pizza production line. Schwan's negotiated an agreement with Delta to pay $763,250 for its services required to provide a functioning production line. Schwan's requested that Doboy compensate Schwan's for the damages incurred as a result of the problems it experienced with the Doboy equipment, but Doboy refused.

8. Doboy has refused to compensate Schwan's for any losses resulting from the Doboy system.

9. The Doboy designed and installed production line has never operated as promised.

**COUNT I**
**NEGLIGENCE**

10. Schwan's reasserts and realleges the allegations set forth in ¶¶ 1 through 9 and incorporates them by reference.

11. By undertaking the design of the Production Line No. 4, Doboy owed a duty of care to Schwan's to ensure that the design work was performed properly and adequately.

12. Doboy breached this duty by committing the following acts and/or omissions:

a. Inadequately designing the production line;

b. Failing to adequately remedy the problems occurring after the line was installed; and

c. Otherwise acting negligently and/or carelessly.

13. As a direct and proximate result of Doboy's breach of its duties, Schwan's sustained damages in excess of $75,000.00.

**COUNT II**
**BREACH OF CONTRACT**

14. Schwan's realleges the allegations set forth in ¶¶ 1 through 13, and incorporates them by reference.

15. Doboy agreed both orally and in writing that it would design a system for Schwan's that would allow Schwan's to process up to 80 rows of pizza per minute, with three pizza's per row, for a maximum total of 240 sealed products per minute. Doboy also guaranteed that Schwan's could

operate the expanded production line at 97% efficiency, regardless of rate or capacity. Reasonably relying on Doboy's promises, Schwan's agreed to and made payments to Doboy for goods and services to be delivered. After the equipment failed to meet promised performance standards, Doboy also promised that it could resolve these problems.

16. Doboy breached its agreements by failing to perform its work in a workmanlike manner and to provide Schwan's with a system that conformed with the specifications and Doboy's promises. For example, Doboy failed to provide Schwan's with a system capable of operating at 97% efficiency in a sustained manner – despite Doboy's repeated written and oral promises to do so.

17. As a direct and proximate result of Doboy's breaches of its oral and written agreements, Schwan's has suffered damages, including (without limitation) the cost of retaining Delta, lost profits reasonably anticipated to have been derived from the sale of its pizzas, lost production, and additional damages in an amount in excess of $75,000.00.

**COUNT III**
**INTENTIONAL MISREPRESENTATION, FRAUD, FALSE PROMISE AND/OR FRAUDULENT INDUCEMENT**

18. Schwan's realleges the allegations set forth in ¶¶ 1 through 17, and incorporates them by reference.

19. Doboy represented to Schwan's that it was capable of designing a system that could operate at a variable rate, with a capacity of up to 240 pizzas per minute, at an efficiency level of 97% without limitation as to rate or capacity. At the time Doboy made these representations, it knew that the production line would not be able to operate as guaranteed. Doboy made these promises without any intention or reasonable belief Doboy could or would perform. These false representations were

made solely for the purpose of inducing Schwan's into selecting Doboy as its vendor for this project for not only the original contract, but also all change orders and subsequent agreements.

20. During Doboy's tenure, the packaging system never sustained its maximun rate of 240 pizzas per minute or achieved the promised 97% efficiency rate, regardless of the rate or capacity.

21. Prior to working with Schwan's, Doboy – contrary to its representations to Schwan's – had never designed or installed a production line that was able to meet the requirements that it promised to Schwan's.

22. Schwan's relied upon Doboy's false representations and was induced to enter into and continue to do business with Doboy, which it would not have done so but for the representations made by Doboy.

23. As a direct and proximate result of Doboy's intentional misrepresentation, Schwan's has suffered damage in an amount in excess of $75,000.00.

## COUNT IV
## BREACH OF EXPRESS WARRANTIES

25. Schwan's realleges the allegations set forth in ¶¶ 1 through 24, and incorporates the allegations by reference as though fully set forth herein.

26. Doboy warranted that it was capable of designing a system that could operate at the rate of up to 240 pizzas per minute at an efficiency level of 97%. These warranties (and others) formed the basis of Schwan's agreement with Doboy.

27. The goods and services provided by Doboy failed to conform with its express warranties. As a result of Doboy's breach, Schwan's pizzas have been destroyed and production has

been delayed or stopped for substantial periods of time. As a direct and proximate result of Doboy's breach, Schwan's has sustained damage in excess of $75,000.00.

**COUNT V**
**BREACH OF IMPLIED WARRANTIES**

28. Schwan's realleges the allegations set forth in ¶¶ 1 through 27, and incorporates them by reference.

29. Doboy is a "merchant" (as that term is used in Section 2-104 of the Uniform Commercial Code) in goods of the kind at issue in this case. Doboy also holds itself out as an expert in the selection, purchase, and design of automated packaging systems. Further, Doboy knew the particular purposes for which Schwan's was purchasing the goods.

30. Doboy impliedly warranted that the goods would be merchantable and fit for Schwan's particular purposes. Doboy also warranted that it would perform its services in a workmanlike manner.

31. Doboy breached these warranties by failing to provide merchantable goods fit for the particular purpose Schwan's intended to put them and by failing to exercise the degree of care and skill ordinarily required of others performing a similar service.

32. As a direct and proximate result of Doboy's failure to exercise due care, Schwan's has suffered damages in an amount in excess of $75,000.00.

**COUNT VI**
**ESTOPPEL**

33. Schwan's realleges the allegations set forth in ¶¶ 1 through 32 and incorporates them by reference.

34. Doboy promised Schwan's that it would exercise reasonable care in designing and installing Schwan's production line. It made a number of specific promises regarding the performance of the installed line. As late as October of 1999, Doboy continued to promise that it would provide Schwan's with a production line capable of producing up to 240 pizzas per minute at an efficiency level of 97%. Doboy also specifically promised that it would reimburse Schwan's for any consequential damages if Doboy was allowed to continue to work on the project after October, 1999. Doboy made those promises with the expectation that they would induce Schwan's to first select (and later retain) Doboy for the design and installation of its production line.

35. To its detriment, Schwan's relied on Doboy's promises.

36. Doboy has failed to fulfill its promises. Injustice can only be avoided by enforcing Doboy's promise sand holding it liable for Schwan's damages. Schwan's has sustained damages in excess of $75,000.00.

**COUNT VII**
**VIOLATION OF THE MN CONSUMER FRAUD ACT (M.S. § 325.F68, et seq.)**

37. Schwan's realleges and incorporate each of the allegations in paragraphs 1 through 36.

38. Through the conduct described above, Doboy used fraud, false pretense, false promises, misrepresentations, misleading statements, and/or deceptive practices (as those terms are used in Minn. Stat. §325F.69) in its dealings Schwan's. Doboy acted with the intent that Schwan's rely upon them in connection with the sale of "merchandise" (as that term is defined in Minn. Stat. §325F.68).

39. Schwan's did, in fact, rely upon Doboy's fraudulent statements, false pretense, false promises, misrepresentations, misleading statements, and/or deceptive practices (as those terms are used in Minn. Stat. §325F.69).

40. Schwan's suffered damage as a direct, foreseeable, and proximate result of its reliance upon Doboy's fraud, false pretense, false promises, misrepresentations, misleading statements, and/or deceptive practices (as those terms are used in Minn. Stat. §325F.69).

41. Schwan's has sustained damage to business and property in an amount yet to be calculated but thought to in excess of $75,000.00, exclusive of interest and costs.

42. Schwan's is entitled to recover damages from Doboy, as well as reasonable costs of investigation and attorneys' fees, as directed in Minnesota Statutes § 8.31 (subd. 3a).

**COUNT VII**
**DECEPTIVE TRADE PRACTICES: MINN. STAT. §325D.44, ET SEQ.**

43. Schwan's realleges and incorporates each of the allegations in paragraphs 1 through 42.

44. By making the representations identified above, Doboy engaged in a deceptive trade practices. Doboy "represent[ed] that [Doboy's] goods [and] . . . services" had "characteristics, ingredients, uses, [or] benefits" that they do not have.

45. Pursuant to Minn. Stat. §325D.44, Schwan's is entitled to recover its damages resulting from Doboy's deceptive trade practices. Schwan's has sustained damages in excess of $75,000.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**

46. Schwan's realleges paragraphs 1 through 45, and incorporates the allegations by reference.

47. Doboy represented that it could provide Schwan's with a production line capable of producing up to 240 pizzas per minute at an efficiency level of 97%. Doboy repeated these representations long after the packaging system had been installed.

48. Those representations were false.

49. Doboy was negligent in making the representations.

50. Doboy made the representations knowing that Schwan's would rely on them.

51. Schwan's believed the representations to be true and relied on them..

52. As a proximate result of Doboy's misrepresentation, Schwan's has suffered damages in an amount in excess of $75,000.00.

**WHEREFORE**, Defendant, and Counterclaim Plaintiff Schwan's Sales Enterprises, Inc., prays for judgment against plaintiff and counterclaim defendant SIG Pack, Inc., as follows:

1. Dismissal with prejudice of SIG Pack, Inc.'s complaint;

2. An award of damages against SIG Pack, Inc. in excess of $75,000.00 with pre-judgment interest, the exact amount to be proven at trial;

3. For such other and further relief as the court deems just and proper, together with post-judgment interest, attorney's fees, costs and disbursements herein.

**TRIAL BY JURY IS HEREBY DEMANDED.**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant hereby restates its demand for trial by jury, composed of a maximum number of jurors allowed by law, on all of the issues in this case.

Dated: 3-15-01

MARK J. HELEY (#159116)
THOMAS E. PROPSON (#231046)
*MEAGHER & GEER, P.L.L.P.*
4200 Multifoods Tower
33 South Sixth St.
Minneapolis, MN 55402
(612) 338-0661

***Attorneys for Defendant and Counterclaim Plaintiff Schwan's Sales Enterprises, Inc.***

867547.2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

SIG Pack, Inc., Doboy Division,

Plaintiff and Counterclaim Defendant,

vs.

Schwan's Sales Enterprises, Inc.,

Defendant and Counterclaim Plaintiff.

Court File No.01-CV-263 DWF/AJB

---

**STATE OF MINNESOTA**

**SS:** **AFFIDAVIT OF SERVICE BY MAIL**

**COUNTY OF HENNEPIN**

Carla M. Stevenson, being first duly sworn on oath, deposes and states: That on March 15, 2001, she served the attached **Answer and Counterclaim of Schwan's Sales Enterprises, Inc.** upon the following-named attorneys, representing the parties as indicated, by addressing a true and correct copy thereof to said attorneys' last known address with postage prepaid thereon, and by depositing same in the U.S. Mail in the City of Minneapolis, County of Hennepin and State of Minnesota.

***ATTORNEY FOR PLAINTIFF:***

Geoffrey P. Jarpe, Esq.
Maun & Simon PLC
2000 Midwest Plaza Building West
801 Nicollet Mall
Minneapolis, MN 55402-2534

Carla M. Stevenson
Carla M. Stevenson

Subscribed and sworn to before me on March 15, 2001.

Leeanne R. Ginestra
**Notary Public**

LEEANNE R. GINESTRA
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

**871159.1**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

SIG Pack, Inc., Doboy Division, Court File No.01-CV-263 DWF/AJB

Plaintiff and Counterclaim Defendant,

vs.

Schwan's Sales Enterprises, Inc.,

Defendant and Counterclaim Plaintiff.

---

**STATE OF MINNESOTA**

**SS:** **AFFIDAVIT OF SERVICE BY MAIL**

**COUNTY OF HENNEPIN**

Carla M. Stevenson, being first duly sworn on oath, deposes and states: That on March 15, 2001, she served the attached **Answer and Counterclaim of Schwan's Sales Enterprises, Inc.** upon the following-named attorneys, representing the parties as indicated, by addressing a true and correct copy thereof to said attorneys' last known address with postage prepaid thereon, and by depositing same in the U.S. Mail in the City of Minneapolis, County of Hennepin and State of Minnesota.

***ATTORNEY FOR PLAINTIFF:***

Geoffrey P. Jarpe, Esq.
Maun & Simon PLC
2000 Midwest Plaza Building West
801 Nicollet Mall
Minneapolis, MN 55402-2534

Carla M. Stevenson
Carla M. Stevenson

Subscribed and sworn to before
me on March 15, 2001.

Leeanne R. Ginestra
**Notary Public**

**871159.1**

LEEANNE R. GINESTRA
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005